Stanley C. **RODGERS** d/b/a Rodgers Real Estate, Appellant,

v.

Harold C. **BAUGHMAN** and Gladys M. Baughman, Husband and Wife; and Levelcrest Farms, Inc., A Corporation, Appellees.

No. 68847.

Supreme Court of Iowa.

Dec. 21, 1983.

Vern M. Ball, Bloomfield, for appellant.

Robert A. Hutchinson and David C. Craig of Brown, Winick, Graves, Donnelly & Baskerville, Des Moines, for appellees.

McCORMICK, Justice.

Plaintiff Stanley C. Rodgers is a real estate broker who brought this action to recover a real estate commission of $87,500 from defendants Harold C. Baughman, Gladys M. Baughman, Levelcrest Farms, Inc., and William C. Sherman. At the conclusion of plaintiff's evidence in a bench trial, the trial court sustained defendants' motion for directed verdict, which we treat as a motion to dismiss. Plaintiff contends the court erred in sustaining the motion except as to Sherman. Because we find no merit in the three grounds upon which the motion was sustained as to the other defendants, we reverse and remand.

In sustaining the motion, the trial court held that the listing agreement did not comply with rule 700–1.23 of the Iowa Administrative Code, Sherman did not comply with a condition precedent to the sale, and plaintiff failed to adduce substantial evidence that the defendant corporation had obtained authority to sell the real estate in compliance with Iowa Code section 496A.76 (1981).

We review the evidence in the light most favorable to the party against whom the motion was sustained. The movant is considered to have admitted the truth of all evidence offered by the adversary and every favorable inference that

fairly and reasonably may be deduced from it. *Brown v. Ellison,* 304 N.W.2d 197, 202 (Iowa 1981). An order sustaining such a motion rests on legal grounds and does not find facts. *Henschel v. Hawkeye-Security Insurance Co.,* 178 N.W.2d 409, 414 (Iowa 1970). Sustention is warranted only when the evidence is insufficient as a matter of law to permit the adverse party to recover. *Roth v. Headlee,* 238 Iowa 1340, 1343, 29 N.W.2d 923, 924 (1947). We will summarize the relevant evidence in the light most favorable to plaintiff.

Harold C. Baughman and his wife Gladys owned and operated a farm in Davis County consisting of 787 acres. In the late 1970's they conveyed 777 acres of the farm to Levelcrest, Inc., a corporation of which they have always been the sole officers and directors and for which Harold has always acted. The corporation issued 100,000 shares of stock, 42,675 to each of the Baughmans and 14,650 to their children and to charities. At the time of the events in the present case, the Baughmans thus owned ten acres of the farm in joint tenancy and the corporation owned the remainder.

Dwight Blasi is a salesman for Rodgers. In February 1981 Blasi contacted the Baughmans about listing the farm and obtained a listing from them in May. Blasi signed the listing for Rodgers and Harold signed it for himself, his wife and the corporation. Harold's agency relationship was not shown in the listing agreement. He was identified under his signature only as "Owner."

The farm was described in the listing as:

787 acres M/L 90% tillable. A top Davis Co. farm. 3 houses, 5 barns. 2 Harvestores 25 × 65 & 20 × 50—12,000 bu. grain. Cattle feeding set up with feed house & auger. 120′ bunk. 50,000 bu. grain storage with drying floors & blowers. 20 h.p. 2 blowers on 48 ft. 7 ring. 1 blower on 36 ft. 8 ring bin. Good machine shed 54 × 72′. Good modern 2 story houses. Good heating system, hot waterheat. Rural water. All outside fences good. This farm is in a high state of fertility.

Additional details were shown concerning features of one of the homes on the property. Baughmans did not own any other Davis County farm. The listing called for a five percent commission if the Rodgers firm procured a purchaser for the farm. The land was listed for $2,000,000.

Blasi subsequently obtained an offer from Sherman to purchase the farm for $1,725,000. Defendants accepted his offer, which was contingent on Sherman being able to sell a farm he owned by July 2, 1981. A purchase agreement between the sellers and buyer was executed on June 12, 1981. The sellers were shown as the Baughmans and Levelcrest Farms, Inc. The property was described in the purchase contract as "787 acres in Cleveland Twp.," and the Baughmans signed as sellers. Sherman signed as buyer.

On July 1, 1981, Sherman had not sold his farm but nevertheless was ready, willing and able to carry out the purchase. Defendants refused to go through with it, however, and Sherman brought an action for specific performance which he later dismissed without prejudice. When defendants refused to pay Rodgers a commission, he brought the present action.

This appeal by plaintiff followed the court's dismissal of the case on defendants' motion at the close of plaintiff's case-in-chief. We now examine the merits of the three grounds relied on by the court in its ruling.

I. *Sufficiency of the listing.* The trial court found the listing agreement did not comply with a rule of the real estate commission requiring listing agreements to be in a certain written form:

All listing agreements shall be in writing, properly identifying the property and containing all of the terms and conditions under which the property is to be sold, including the price, the commission to be paid, the signatures of all parties concerned and a definite expiration date. It shall contain no provision requiring a party signing the listing to notify the

broker of his intention to cancel the listing after such definite expiration date. 700 I.A.C. § 1.23. We upheld the authority of the commission to adopt this rule in *Milholin v. Vorhies,* 320 N.W.2d 552, 554 (Iowa 1982). We must now determine the effect of the rule in the facts of this case.

Defendants contend the listing agreement was deficient in two respects, one in the adequacy of the description of the real estate and the other in the adequacy of the signatures. The rule requires a listing "properly identifying the property" and the signatures of "all parties concerned."

In *Milholin,* this court said the commission rule is analogous to a statute of frauds. *Id.* at 554. The court endorsed a statement of the Vermont Supreme Court characterizing an almost identical rule:

> Ostensibly, the purpose of this rule is for the protection of the public to establish fair dealings between parties, standardize the procedure and practices in the real estate business and to prevent fraud. Its purpose is similar to that of the statute of frauds, which, ... "is to prevent a party from being compelled, by oral and perhaps false testimony to be held responsible for a contract he claims he never made."

*Green Mountain Realty, Inc. v. Fish,* 133 Vt. 296, 299, 336 A.2d 187, 189 (1975). The effect of the rule "is not to invalidate oral listing agreements but to make them unenforceable upon proper objection." *Milholin,* 320 N.W.2d at 554.

■■ As with a statute, we seek to ascertain and give effect to the intent of the drafters of the rule. We construe it liberally "to promote its objects and assist the parties in obtaining justice." Iowa Code § 4.2 (1983). We believe that like a statute of frauds the rule is intended to be available as a shield and not a sword. *See Warder & Lee Elevator, Inc. v. Britten,* 274 N.W.2d 339, 342 (Iowa 1979).

A property description is sufficient to satisfy a general statute of frauds if it meets the following standard:

> The land must be so described that it can be identified with reasonable certainty. The writing must disclose a description which is itself definite and certain or it must furnish the means or key by which the description may be made certain and identified with its location on the ground. In other words the contract, note, or memorandum is insufficient where parol evidence is necessary to supply the description, or part thereof, to determine and define the subject matter, and to show the intention and agreement of the parties as to the subject matter; and it is sufficient as regards subject matter where it furnishes a sufficient foundation for the admission of extrinsic evidence to apply the description and by means of such evidence the particular tract of land which is the subject matter of the agreement may be identified and located to the exclusion of all others.

37 C.J.S. *Frauds, Statute of* § 184, at 670 (1943). Statutes requiring listing agreements to be in writing are usually no more specific than a general statute of frauds in stating the requisites for a description. The question of specificity is left for judicial determination. *See Annot.,* 30 A.L.R.3d 935, 941 (1970).

■■■ Rule 700–1.23 requires a writing "properly identifying the property." An identification is thus sufficient if it is "proper," but the rule does not specify what constitutes a proper identification of the property. We believe the commission intended that the general statute of frauds standard be applied. We therefore conclude that, as with a general statute of frauds, a description properly identifies the property where it furnishes a sufficient foundation for the admission of extrinsic evidence to apply the description and by means of such evidence the particular tract of land which is the subject matter of the agreement may be identified and located to the exclusion of all others.

Other courts have applied that standard in upholding the sufficiency of various descriptions in listing agreements. *See, e.g., Needham v. Abbott Kinney Co.,* 217 Cal. 72, 76, 17 P.2d 109, 110 (1932); *Shields &*

*Co. v. Green,* 100 Idaho 879, 882, 606 P.2d 983, 986 (1980); *Gantt v. Harper,* 86 Mont. 69, 74, 281 P. 915, 916–17 (1929); *Henderson v. Lemke,* 60 Or. 363, 366, 119 P. 482, 483 (1911); *Pickett v. Bishop,* 148 Tex. 207, 209–10, 223 S.W.2d 222, 223–24 (1949); *Johnson v. Allen,* 108 Utah 148, 156–58, 158 P.2d 134, 138–39 (1945).

Under that standard the identification was sufficient in this case. Defendants could not complain that they could be held responsible by the description for listing a different 787-acre Davis County farm than plaintiff asserts was the true subject matter of the listing. Nothing in the description opened defendants to the possibility of fraud based on any deficiency in identifying the property. The identification in the listing obviously provides a sufficient foundation for extrinsic evidence showing the legal description of the 787-acre Davis County farm owned by defendants. Even though the problem could have been avoided if the legal description had been used in the listing, the description here did not violate the rule.

Defendants' attack on the sufficiency of the signatures is similarly without merit. This court has recognized that a listing agreement is enforceable against the listing party even when the listing party could not convey title. *See McHugh v. Johnson,* 268 N.W.2d 225, 227 (Iowa 1978). Similarly, a corporation can be bound by listings executed for it by an agent. *See Sergeant v. Leonard,* 312 N.W.2d 541, 548 (Iowa 1981).

Thus the term "all parties concerned" as used in rule 700–1.23 does not require the signature on the listing agreement of all persons having an ownership interest in the property. Rather, when viewed in the light of the purpose of the rule, the relevant language merely requires the listing to be signed by or in behalf of all persons the broker seeks to hold responsible for the listing agreement.

Here the listing agreement was signed by Harold C. Baughman. The fact finder could conclude Harold signed for himself and as agent for Gladys and the corporation. The record would thus permit a finding that the listing was signed by or in behalf of the parties concerned on the listing parties' side of the transaction. The trial court erred in holding otherwise.

We have no occasion to determine whether deficiencies in a listing can be overcome by subsequent execution of a purchase agreement.

II. *The condition precedent.* Defendants alleged a failure of plaintiff to adduce substantial evidence to show the condition precedent in Sherman's offer was satisfied by July 2, 1981, as required in the purchase agreement. The provision at issue made the offer subject to Sherman's ability to sell his farm by that date. The trial court accepted defendants' view in also dismissing the action on this ground.

It is well established that a party may waive a condition precedent to his own performance of a contractual duty, when such condition precedent exists for his sole benefit and protection, and compel performance by the other party who has no interest in the performance or nonperformance of the condition. *H.L. Munn Lumber Co. v. City of Ames,* 176 N.W.2d 813, 816 (Iowa 1970). The record does not disclose any basis for finding defendants had any interest in the condition precedent. It was obviously for Sherman's sole protection. Moreover, the fact finder could find Sherman waived the condition by writing defendants on July 1, 1981, that he was ready, willing and able to complete the purchase. The trial court erred in dismissing the action on this ground.

Defendants' argument that plaintiff did not assert waiver in the trial court is without merit. They base their argument on the fact plaintiff alleged in the trial court that all parties waived the condition rather than only Sherman. This allegation put Sherman's waiver in issue, and that is all that was required. The waiver issue was sufficiently raised.

III. *Authority of the corporation.* The third ground of defendants' motion

was their assertion that plaintiff failed to offer substantial evidence of shareholder approval of the proposed sale of the farm. They rely on Iowa Code section 496A.76 (1981) which requires majority shareholder approval of sales of corporate assets that occur other than in the regular course of business.

■ We assume, without deciding, that defendants raised their section 496A.76 defense in timely manner. Section 496A.76 prescribes internal procedures to obtain stockholder approval of sales "of all, or substantially all, the property and assets ... of a corporation, if not made in the usual and regular course of its business." This provision comes from the ABA Model Business Corporation Act. *See* 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 2.22, at 81–82 (rev. perm. ed. 1983). The primary purpose of such a provision is to protect shareholders, and it "is not assertible by the corporation itself to invalidate the transaction." 6A W. Fletcher, *supra* § 2949.2, at 628 (rev. perm. ed. 1981); *see, e.g., U-Beva Mines v. Toledo Mining Co.*, 24 Utah 2d 351, 355, 471 P.2d 867, 869 (1970).

■ Plaintiff's action against the corporation depends on the Baughmans' authority to bind the corporation. Their authority may be actual or apparent. *See Newberry v. Barth, Inc.*, 252 N.W.2d 711, 714 (Iowa 1977). Compliance with section 496A.76 is one way to establish actual authority, but that provision was not shown to have been followed in this case. Substantial evidence of actual authority exists, however, in the evidence that the Baughmans, who own 85 percent of the corporate stock and are the corporation's only directors and officers, approved the transaction for the corporation. Contracts executed on behalf of a close or family corporation in such circumstances will bind the corporation despite noncompliance with statutory formalities. *See generally* 2 W. Fletcher, *supra* § 444, at 345–48 (rev. perm. ed. 1982). Moreover, the fact finder could also find on substantial evidence that the Baughmans had apparent authority to

act for the corporation in the sale of the farm. Mere want of actual authority, if true, "will not relieve a corporation from the burden of a contract made in reasonable reliance upon such appearance of authority." *Newberry*, 252 N.W.2d at 714. Ample evidence of agency existed here.

■ The trial court should not have sustained defendants' motion on the ground of noncompliance with section 496A.76.

We find no merit in any of the grounds relied on by the trial court. The case must be reversed and remanded for completion of trial and appropriate submission to the court as trier of fact.

REVERSED AND REMANDED.

All justices concur except REYNOLDSON, C.J., and UHLENHOPP and McGIVERIN, JJ., who dissent.

UHLENHOPP, Justice (dissenting).

I think this case is governed by the plain language of rule 700–1.23 of the Iowa Administrative Code. That rule states:

> All listing agreements shall be *in writing, properly identifying the property* and containing all of the terms and conditions under which the property is to be sold, including the price, the commission to be paid, *the signatures of all parties concerned* and a definite expiration date. It shall contain no provision requiring a party signing a listing to notify the broker of his intention to cancel the listing after such definite expiration date.

(Emphasis added.)

In construing administrative rules we apply the principles applicable to the construction of statutes. This means we give effect to all the language in the rule, and we give the language its usual and ordinary meaning unless the context indicates otherwise. *Pottawattamie County v. Iowa Department of Environmental Quality*, 272 N.W.2d 448, 454 (Iowa 1978); *Mallory v. Paradise*, 173 N.W.2d 264, 267 (Iowa 1969).

I. As to the clause in the rule that a listing shall be "in writing ... containing ... the signatures of all parties concerned", this listing contained only the signatures of the realtor and "Harold C. Baughman"—although three owners existed. The word "concerned" means "affected" or "interested", and "all" in this context means "everybody". *Webster's Third New International Dictionary* (1969). As owners, Mrs. Baughman and the corporation were affected and interested parties. The plain wording of the rule requires that the writing contain their signatures, but it does not; the signature "Harold C. Baughman" cannot be stretched to be three signatures. Whether Harold C. Baughman could have signed the other two signatures (assuming he had authority) need not be decided; no one affixed their signatures.

This is not the rare case in which a property, owned by several persons, is listed by only one of them; the realtor and the lister intend that those two are the only parties to the listing; and if the realtor finds a buyer the lister alone is liable for the commission and is liable whether or not the owners sell. *See McHugh v. Johnson*, 268 N.W.2d 225 (Iowa 1978). No necessity exists to say what effect rule 700–1.23 has on those cases. In this case Mr. Baughman is claimed to have acted for all three owners, but the signatures of two of them are not on the listing. If the principle of *McHugh* is extended to this kind of case, the requirement of the *signatures* of *all* parties concerned will be pretty well nullified in multiple owner situations. The realtor and one of the owners can sign the listing and the other owners can be shown by parol to be listers notwithstanding the requirement that the *writing* contain the signatures.

II. As to the clause that a listing shall be "in writing, properly identifying the property", the listing here stated:

787 acres M/L 90% tillable. A top Davis Co. farm. 3 houses, 5 barns. 2 Harvestores 25 × 65 & 20 × 50–12,000 bu. grain. Cattle feeding set up with feed house & auger. 120' bunk. 50,000 bu. grain storage with drying floors & blowers. 20 h.p. 2 blowers on 48 ft. 7 ring. 1 blower on 36 ft. 8 ring bin. Good machine shed 54 × 72'. Good modern 2 story house. Good heating system, hot water heat. Rural water. All outside fences good. This farm is in a high state of fertility.

In addition, the listing provided details about the main house and garage such as size, number of rooms, and heating system.

What did the real estate commission intend by the words, "in writing, properly identifying the property"? The general statute of frauds on sales of real estate is not analogous. It merely states that only written evidence is competent in the case of contracts "for the creation or transfer of any interest in lands, except leases for a term not exceeding one year." Iowa Code § 622.32(3) (1979). A clause relating to identification of the land is not to be found in that statute; such requirement as exists regarding identification has been added by judicial gloss.

The decisions cited by the majority are not analogous for the same reason: they do not involve statutes or rules containing the express requirement of a "writing, properly identifying the property". *Needham v. Abbott Kinney Co.*, 217 Cal. 72, 76, 17 P.2d 109, 110 (1932) (involved pre-1931 statute which provided as to listings: "the following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent; ... 6. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission; ..." Civ.Code of Calif. § 1624(6) (1906).); *Shields & Co. v. Green*, 100 Idaho 879, 882, 606 P.2d 983, 986 (1980) (involved section 9–508 of Idaho Code: "No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one person of a purchaser of real estate of another shall be valid unless the same shall be in writing, signed by the owner of such real estate, or his legal, appointed and duly

qualified representative."); *Gantt v. Harper*, 86 Mont. 69, 74, 281 P. 915, 916–17 (1929) (involved listing in the form of an option and contract for sale of real estate under Montana general statute of frauds: "Every contract for the leasing for a longer term than one year, or for the sale of any lands or interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the parties by whom the lease or sale is to be made." *See Ryan v. Davis*, 5 Mont. 505, 510, 6 P. 339, 341 (1885).); *Henderson v. Lemke*, 60 Or. 363, 366, 119 P. 482, 483 (1911) (involved the following clause of the general statute of frauds: "8. An agreement entered into subsequent to the taking effect of this act, authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."); *Pickett v. Bishop*, 148 Tex. 207, 209–10, 223 S.W.2d 222, 223–24 (1949) (involved statute prohibiting action on listing " 'unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him therewith lawfully authorized.' "); *Johnson v. Allen*, 108 Utah 148, 156–58, 158 P.2d 134, 138–39 (1945) (involved statute providing " 'Every agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation' shall be void, unless some 'note or memorandum thereof, is in writing subscribed by the party to be charged.' ").

Rule 700–1.23, however, is explicit. As to the property listed, the rule contains three express requirements. First, the property must be identified in writing: "in writing, properly identifying the property". The identification must thus stand or fall on what is in the written listing. Nor is the question determinative as to whether the parties themselves know what property is listed; under the rule, again the question is whether the writing contains the identification. The test is thus objective: the contents of the writing, not the contents of the individuals' minds.

The second requirement is a writing "identifying" the property. Although the parties may be claimed to know the property, the listing must identify it. To identify is "to establish the identity of". *Webster's Third New International Dictionary* (1969).

The third requirement is a writing "properly" identifying the property. Properly means "in a proper manner: as a: in a fit manner: suitably b: strictly in accordance with fact: correctly". *Id.*

While I do not think the writing need describe the property with the punctilio of a deed, I do believe the present listing is entirely inadequate as a "writing, properly identifying the property".

III. By drafting rule 700–1.23 as it did, the real estate commission probably hoped to reduce the number of disputes and lawsuits between realtors and property owners as to whether a listing was made, what property was listed, who made the listing, and what the terms of the listing were. A loose construction of the rule will not further the commission's aim of tightening up listings. If with experience the commission perceives that it has written the rule too strictly, the commission rather than this court should be the body to relax the requirements, by redrafting. I would affirm the judgment on the ground that the listing does not meet the signatures and identification requirements of the rule and is therefore unenforceable under *Milholin v. Vorhies*, 320 N.W.2d 552 (Iowa 1982).

REYNOLDSON, C.J., and McGIVERIN, J., join in this dissent.